STATE OF NORTH CAROLINA v. FRANK K. GRIGGS

No. 7018SC549

(Filed 16 September 1970)

Criminal Law § 76— inculpatory in-custody statements — admission in evidence without voir dire hearing

    In this prosecution for felonious assault and attempted armed robbery, the trial court erred in the admission, over defendant's objection, of evidence of in-custody statements made by defendant which placed him near the crime scene and at the place where the victim first encountered his assailant and showed that defendant was using an alias name on the night in question because he was being sought for another crime, where the court conducted no *voir dire* examination to determine the voluntariness of defendant's statements, since the statements, although not a confession, tended to be inculpatory.

On *certiorari* to review judgment of *Gywn, J.,* 11 August 1969 Session, GUILFORD Superior Court.

Because of the delay of the court reporter in furnishing to counsel a transcript of the trial proceedings, and counsel's consequent inability to timely docket the record in this Court, we allowed *certiorari* to perfect a late appeal.

Defendant was charged in two bills of indictment with felonious assault and attempted armed robbery. Defendant entered pleas of not guilty to each charge. From a verdict of guilty of felonious assault and attempted armed robbery, defendant appeals.

The State's evidence tended to show that, on the night of 11 February 1969, the prosecuting witness, Mr. William R. Gunz, entered the Rathskeller Restaurant in the City of Greensboro, sat at a table and talked with the defendant, who was theretofore a stranger to him, for about two hours, and left. As he was starting his automobile, the defendant entered the front

seat, pointed a pistol at Mr. Gunz, announced that "This is a stick-up," and shot Mr. Gunz in the face. The State's evidence further tended to show that, shortly after the alleged shooting, the defendant was accosted by Officer W. J. Kisby of the Greensboro Police Department. The defendant took the officer's service revolver at gunpoint, but was shortly thereafter captured by Officer Kisby. The customer register of the Rathskeller, for the night in question, included the name of Jerry Lee Shaw.

*Attorney General Morgan, by Staff Attorney Walker, for the State.*

*Alston, Pell, Pell & Weston, by E. L. Alston, Jr., for defendant appellant.*

BROCK, J.

At the close of the State's evidence, the defendant moved for judgment of nonsuit, which motion was denied. The State was then permitted to re-open its case, and Officer H. D. Blue of the Greensboro Police Department testified as to conversation between himself and the defendant, while the defendant was in custody, quoted as follows:

"I did not know this defendant prior to seeing him in connection with this case. The name Jerry Lee Shaw is the name he gave us when he was arrested by the officer on the 12th. He did not tell me that was his name. That just came to me through some of the other police officers.

Q. All right, sir. Sometime later did you receive a phone call from the defendant?

A. Yes, sir.

Q. When and under what circumstances was that?

A. That was after he had been arrested in the Gunz case. One evening I went home after work and I received a call from the defendant, he was still in the County jail. He told me that his real name was Frank Griggs. MOTION TO STRIKE. MOTION OVERRULED. EXCEPTION. DEFENDANT'S EXCEPTION NO. 3.

WITNESS CONTINUES:

That he had seen his brother's name in the cell where he was locked up written on the wall. He got to thinking

about it and wanted to tell me his real name. He also wanted to tell me that he was wanted here in Greensboro under the name of Frank Griggs. MOTION TO STRIKE. MOTION DENIED. EXCEPTION. DEFENDANT'S EXCEPTION NO. 4.

When he called me he identified himself to me. I had had conversations with him before, and recognized his voice. I talked to him again the next morning, but this was all the conversation was about that night on the telephone.

CROSS EXAMINATION (By Mr. Alston)

The defendant told me that he did not shoot anybody or attempt to rob anybody in the early morning hours of February 12, 1969. He did not tell me that he didn't remember leaving the Rathskeller. He did not tell me that he had a bus ticket back to Winston-Salem and was trying to get to the bus station from the Rathskeller.

REDIRECT EXAMINATION (By Mr. Clark)

I first talked with the defendant around 11:00 a.m. on the 12th of February. Before talking to him I advised him of his constitutional rights. I advised him he did not have to make any statement to me, that anything he said could be used in court against him, that before answering any questions, that if he could not afford an attorney one would be appointed for him and he could wait until his appointed attorney was present before answering questions. I asked him if he understood these rights and he said he did. He said he would make a statement to me.

Q. And, do you recall what he said at that time? OBJECTION. OBJECTION OVERRULED. EXCEPTION. DEFENDANT'S EXCEPTION NO. 5.

He stated that he came to Greensboro on the 11th from Winston-Salem by way of bus, and after arriving he went to the Greensboro Coffee Shop and had a couple of beers. The Greensboro Coffee Shop is at the intersection of Washington and Greene Streets. After leaving there he stopped at one other place and had one other beer. After leaving the second place he was walking around waiting on a bus to go back to Winston-Salem. He said he worked for Thomasville Furniture Company.

Q. What did he say about taking Mr. Kisby's gun? OBJECTION. OBJECTION OVERRULED. EXCEPTION. DEFENDANT'S EXCEPTION NO. 6.

A.   What I asked him about this charge he told me that he didn't do anything like that, that the police officer was crazy.

On this particular date he denied being at the Rathskeller. On the 17th I confronted him with a register we had from the Rathskeller. OBJECTION. OBJECTION OVERRULED. EXCEPTION. DEFENDANT'S EXCEPTION NO. 7.

He stated: 'Well, I could have been down there.' MOTION TO STRIKE. MOTION OVERRULED. EXCEPTION. DEFENDANT'S EXCEPTION NO. 8.

Q.   On the 12th when he disrobed, what statement did he make about the abrasions and scratches on his body? OBJECTION. OBJECTION OVERRULED. EXCEPTION. DEFENDANT'S EXCEPTION NO. 9.

A.   He told me that a board fell on him at work. He did not state how long ago that had been or make any other statements about it at all.

Q.   When you talked to him about his name being Griggs, did you ask him why he was using the name 'Shaw?' OBJECTION. OBJECTION OVERRULED. EXCEPTION. DEFENDANT'S EXCEPTION NO. 10.

A.   He told me he was wanted here in Greensboro on a felonious larceny charge and that's the reason he was using another name. MOTION TO STRIKE. MOTION OVERRULED. EXCEPTION. DEFENDANT'S EXCEPTION NO. 11.

Q.   What, if anything, did he later say to you about being at the Rathskeller? OBJECTION. OBJECTION OVERRULED. EXCEPTION. DEFENDANT'S EXCEPTION NO. 12.

A.   I don't recall him making any statement other than the fact he could have been down on that night. I went over State's Exhibit 1 with him, the register book, and showed him where his name was written in the log book on page 3 circled in red.

Q.   And in response to that he said he may have been at the Rathskeller? OBJECTION.

COURT: That's leading but the Court allows the leading character in the Court's discretion.

A.   Yes. EXCEPTION. DEFENDANT'S EXCEPTION NO. 13."

Redding v. Woolworth Co.

Timely objections and exceptions to this testimony were made by counsel. The record discloses that this testimony was admitted without a *voir dire* examination to determine the voluntariness of the statements of the defendant.

The statements placed defendant, on the night in question, in Greensboro, near the scene of the alleged crime, and at the very place where Mr. Gunz first encountered his assailant. They further showed that his reason for using the alias of Shaw was that he was being sought in Greensboro for another crime.

The statements, while not technically a "confession," inasmuch as defendant did not admit guilt, nevertheless tended to be inculpatory. Defendant contends, and we agree, that their admission without a determination that they were voluntarily given constituted prejudicial error.

New Trial.

MORRIS and GRAHAM, JJ., concur.